LYLE *v*. FEDERAL UNION INSURANCE COMPANY.

4-7312                                    178 S. W. 2d 651

Opinion delivered March 20, 1944.

1124

*Claude B. Brinton,* for appellant.

*Verne McMillen,* for appellee.

ROBINS, J.   The dwelling house of appellants in the city of Jonesboro, Arkansas, was insured against loss or damage by fire by appellee, Federal Union Insurance Company, in the sum of $1,000 and by appellee, Hartford Fire Insurance Company, in the sum of $2,500, and while so insured was damaged by fire on February 7, 1943.  An estimate was made showing that the building suffered damage by the fire in the sum of $3,297.39. Negotiations between appellants and Paul Howard, as adjuster for both companies, ensued and resulted in an agreement, according to the contention of appellants, for payment of $2,650 by both companies in settlement of the loss under the two policies.  Thereafter a draft from the first named company in the sum of $726.32 and a draft from the second named company in the sum of $1,819.30 (the drafts totaled $2,545.62) were sent to the local agent of the insurers.  When appellant, J. E. Lyle, called for the drafts he called attention to the fact that they totaled $104.38 less than the agreed amount.  According to his testimony, he was told by one of the insurance agents and by a representative of the adjuster that the misunderstanding would be "straightened out," and on this assurance he cashed the drafts.  Each of the drafts bore an indorsement to the effect that same was in full settlement of all claims and demands under the respective policies involved.  Not receiving any further payment appellants instituted suit against the two companies for $751.77, the difference between the amount of damage claimed, $3,297.39, and the amount realized from the two drafts, $2,545.62.

The answer of appellees denied that they had agreed to pay appellants $2,650 and set up acceptance and payment of the drafts as an accord and satisfaction.

Mrs. Minnie Mae Hickey testified that she was employed by the United Insurance Agencies, which repre-

sented one of the companies, and as notary public took the affidavit of appellants to the proofs of loss; that these proofs of loss were in blank when appellants signed them; that she knew there was a complaint by Mr. Lyle about the amount of the check, and that he had refused to accept the check in full settlement.

Appellant, J. E. Lyle, testified that at the request of Mr. Cole and Mrs. Hickey he had an estimate of the damage made; that he got C. A. Stuck & Sons to make an estimate and their estimate showed the damage to be $3,297.39; that an agreement was reached on the amount due, and he and his wife signed the proofs of loss in blank and later the checks came; that the checks were found to be $104.38 short, and the adjuster was so notified; that acting on the advice of Mr. Cole, agent of one of the companies, he took the checks, but did not accept same in full settlement; that Mr. Howard's office was called and the representative said the matter would be "straightened out."

Y. A. Cole, the local agent of appellant, Federal Union Insurance Company, testified that he had nothing to do with the adjustment, but he understood the amount agreed on was $2,650, and that the loss was pro rated between the two companies; that he made a memorandum of what his company was to pay, and when the checks came in, the check from his company was less than his memorandum; that the total of the two checks was over $100 short of the settlement; that Mr. Lyle said a mistake had been made and they got in touch with the adjuster who said that he did not think a mistake had been made, but that he would send to his home office and secure the work sheet, and that the adjuster agreed to take it up with the companies to reopen the case. He denied that he had told Mr. Lyle to receive and cash the checks, but testified that at the time Mr. Lyle accepted the drafts from him he said he was taking the drafts under protest and would sue if the matter was not adjusted, and that he thereupon told Mr. Lyle the matter would be "ironed out."

Buck Pryor testified that he was part owner of the United Insurance Agencies and was agent for the Hartford Fire Insurance Company, appellee; that the loss was reported and left to Mr. Howard; that he had no information from Mr. Howard as to the amount he owed, but Mr. Lyle claimed the amount was $2,700; that Mr. Lyle refused to accept the checks when they were first presented to him because they were for the wrong amount; that he finally accepted them under protest.

Herschel McCracken testified that he made an estimate of the fire loss, placing the amount at $3,297.39.

J. M. Swanson testified that he had made an estimate of the loss on the Lyle house, placing same at $3,257.

At the conclusion of appellants' testimony, appellees moved for a directed verdict, which was denied, and the court thereupon instructed the jury, over appellants' objection, to return a verdict for the sum of $104.38, this being the difference between $2,650, which appellants claimed was the amount agreed upon, and $2,545.62, the total of the two drafts which appellants received and cashed.

Appellants filed motion for new trial, which was overruled and appellants prayed and were granted an appeal to this court. Appellees have cross-appealed, but since they failed to file motion for new trial their cross-appeal may not be considered by us. *St. L. S. W. Ry. Co.* v. *Alverson,* 168 Ark. 662, 271 S. W. 27; *Stacy* v. *Edwards,* 178 Ark. 911, 12 S. W. 2d 901; *Aetna Life Ins. Co.* v. *Martin,* 192 Ark. 860, 96 S. W. 2d 327; *The Equitable Life Assur. Soc.* v. *Barton,* 192 Ark. 984, 96 S. W. 2d 480.

The testimony adduced in the lower court tended to establish that the damage by fire to the dwelling house of appellants amounted to $3,297.39, and that an agreement had been made between appellants and the adjuster acting for appellees for a settlement of the amount due under the two policies herein involved on payment to appellants by appellees of the sum of $2,650. This set-

tlement constituted a liquidation of the amount of the claim, so that, when the drafts were made out and transmitted, there was no dispute as to the amount due, because, according to the testimony, appellants had agreed to accept and appellees had agreed to pay the sum of $2,650 in settlement of all liability under the two policies. The claim was, therefore, under the testimony adduced on behalf of appellants, a liquidated one, and the cases cited by appellees, wherein it was held that acceptance of a draft, carrying a notation to the effect that it was payment in full, in settlement of an unliquidated or disputed claim, even though it is accepted unwillingly and under protest, is a bar to future action, are not applicable.

On the contrary, the rule as stated in Am. Jur., Vol. 1, p. 239, is: "The fact that a written receipt in full is given by the creditor upon part payment of the liquidated claim does not, according to the great weight of authority, take the case out of the general rule and show even *prima facie* a good accord and satisfaction, and most certainly does not conclusively do so."

In the case at bar, the testimony adduced on behalf of appellants would have justified a finding that the indorsement and cashing of the drafts by appellants did not amount to a satisfaction of the accord of the claim as asserted by appellees. This being true, appellants were entitled to have submitted to the jury the question of appellees' liability on the original amount of the claim.

Where there is an accord and no satisfaction recovery of the amount of the original claim is not barred.

"Satisfaction is necessary to give effect to an accord, to extinguish the original obligation and to bar an action thereon." 1 C. J. S., p. 540. "Where an accord has been only partly executed or performed, the right of action on the original claim or demand remains, and what has been paid or delivered is allowed in diminution of the amount claimed." 1 C. J. S., p. 545.

In the case of *The City of Memphis* v. *Brown,* 20 Wall. (U. S.) 289, 22 L. Ed. 264, the Supreme Court of the

United States quoted with approval this excerpt from 2 Smith's Leading Cases, 149: "'The accord must be executed, and a mere executory agreement can never be pleaded as an accord and satisfaction. . . . If part of the consideration agreed on be not paid, the whole accord fails'."

The Supreme Court of North Carolina, in the case of *King* v. *Atlantic Coast Line R. Co.*, 157 N. C. 44, 72 S. E. 801, 48 L. R. A., N. S. 450, said: "The transaction partakes of the nature of an accord and satisfaction, which to be effectual, must be performed in its entirety. If performed in part only, the original right of action remains, and the party to be charged is allowed what he has paid in diminution of the amount claimed."

The United States Circuit Court of Appeals (8th Cir.), in the case of *First National Bank of Arkansas City* v. *Leech*, 36 C. C. A. 262, 94 F. 310, said: "It is not enough that there be a clear agreement or accord and a sufficient consideration; but the agreement or accord must be executed before it can be pleaded as an accord and satisfaction. If part of the consideration agreed on be not performed, the whole accord fails." This rule was re-stated and followed by that court in the case of *Shubert* v. *Rosenberger*, 204 Fed. 934, 45 L. R. A., N. S. 1062.

"Accord executed is satisfaction—accord executory is not—and accord must be completely executed, in all its parts, before it can produce any legal obligation or effect." (Headnote) *Pope* v. *Tunstall*, 2 Ark. 209.

"Accord without satisfaction is no defense, even where the performance of satisfaction is prevented by interposition of a third party. . . ." (Headnote) *North State Fire Ins. Co.* v. *Dillard*, 88 Ark. 473, 115 S. W. 154.

In the case of *Ledwidge* v. *Arkansas National Bank*, 135 Ark. 420, 205 S. W. 808, it appeared that Ledwidge was indebted to the bank in the sum of $4,500, and, being in financial difficulties, persuaded the bank, along with his other creditors, to accept settlement by payment of

fifty cents on the dollar of his indebtedness. The bank executed to Ledwidge receipt for $2,250, which recited that it was " 'Payment in full of all demands and claims to this date, and in consideration of said sum the said C. J. Ledwidge is hereby released of and from any and all other demands and claims of every kind and nature to this date.' " Payment of the sum of $2,250 was to be made partly in cash and partly by a good note for approximately $250. In calculating the cash and note in some manner the note was counted twice, as the bank claimed, so that, according to the contention of the bank, Ledwidge lacked $250 of paying the amount of the agreed settlement. Ledwidge contended, however, that no mistake had been made, and that the receipt was a full acquittance. After several months Ledwidge offered to pay the balance of $250, but the bank declined to receive it and brought suit to recover the amount of its original debt of $4,500, less the amount actually paid. The lower court rendered judgment in favor of the bank and this judgment was affirmed by this court. The court, in its opinion, quoting with approval the rule as stated in 1 C. J., p. 533, said: " 'Nothing short of actual performance, meaning thereby performance accepted, will suffice. . . . Accord and part performance do not constitute satisfaction. It is merely executory so long as to its terms something remains, and the party to be charged is allowed what he has paid in diminution of the amount claimed.' "

The only exception to the rule that accord without satisfaction is ineffectual is where the new promise, or promise to perform the accord, is accepted in lieu of the satisfaction. 1 C. J. S. "Accord and Satisfaction" § 22, pp. 489-490; *Whipple* v. *Baker,* 85 Ark. 439, 108 S. W. 830; *Swinton* v. *Cuffman,* 139 Ark. 121, 213 S. W. 409. But there is always a presumption that only the performance itself will render the accord effectual. In a recent case, *Western Military Academy* v. *Viviano,* 235 Mo. App. 301, 133 S. W. 2d 1098, the Supreme Court of Missouri said: " 'Until the contrary is shown it will ordinarily be considered that the parties intended that

1130

only performance of the new promise or agreement, and not its mere. giving and acceptance, should constitute or effect a satisfaction.' '' There is nothing in the testimony that would indicate that appellants meant to accept the mere promise of the insurance companies to pay the amount alleged to have been agreed upon as a satisfaction of the accord, and, in any event, appellees are not in a position to invoke this rule because in their answer they expressly denied that they agreed to pay appellants the sum of $2,650 as alleged by appellants in their complaint.

In the instant case, the jury should have been instructed that if it found that appellants and appellees agreed upon a settlement of appellants' claim at the sum of $2,650 and appellants were led to accept and cash the drafts for a less amount, upon the assurance by agents of the insurance companies that the balance due under the compromise would be paid, appellants were not bound by the acceptance of these drafts and would be entitled to recover the amount of the damage as shown by the testimony, less the amount paid thereon.

It follows from what has been said that the court erred in peremptorily instructing the jury, and the judgment of the lower court is accordingly reversed, and this cause is remanded with directions that appellants be granted a new trial, and for further proceedings not inconsistent with this opinion.